[No. 18511.   Department Two.   April 11, 1924.]

THE STATE OF WASHINGTON, *Respondent*, v.
TONY LARISH IHAN, *Appellant*.[1]

CRIMINAL LAW (343)—NEW TRIAL (3)—DISCRETION OF COURT—
REFUSAL TO EXERCISE. Refusal to exercise the court's discretion on
a motion for new trial on the ground of insufficiency of the evidence
is not shown by remarks of the trial judge that the motion was
denied in order to obtain a ruling of the supreme court on other
points, where it was further stated that the evidence forcibly indi-
cated the guilt of the accused.

INTOXICATING LIQUORS (28)—OFFENSES—MANUFACTURE—STATUTES.
The fermentation of intoxicating liquor being a part of the process
of manufacture, the evidence sustains a conviction of "manufac-
turing" where it appears that defendant was secretly engaged in the
fermentation of three hundred gallons of corn mash, which could
not be used for any other purpose, since it could be taken to a still
for distillation.

Appeal from a judgment of the superior court for
Spokane county, Carey, J., entered January 25, 1923,
upon a trial and conviction of unlawfully manu-
facturing intoxicating liquor. Affirmed.

*M. E. Mack*, for appellant.

*Chas. H. Leavy, Louis F. Bunge*, and *Edward M.
Connelly*, for respondent.

PEMBERTON, J.—Appellant, convicted by a jury of
the crime of unlawfully manufacturing intoxicating
liquor, appeals from the judgment and sentence entered
upon the verdict. During the trial, motions challeng-
ing the sufficiency of the evidence, and a request to
direct the jury to bring in a verdict of not guilty, were
denied. In denying the motion of appellant for a new
trial, the court used the following language:

"If I sustain this motion for a new trial, the state
on appeal to the supreme court will be unable to

[1]Reported in 224 Pac. 935.

obtain a ruling of that court on the correctness or error of my ruling denying the defendant's motion for a directed verdict in his favor. If I deny this motion the defendant on appeal can obtain a ruling of the supreme court on the correctness or error of my ruling. A ruling on this legal question by our supreme court at this time and in the near future, will be of great aid to judges in the trial of similar cases; likewise would such ruling of our supreme court be of great aid to prosecuting attorneys whose frequent duty it is to advise officers of the executive departments of the state as to the meaning of this statute in question.

"In view of the ultimate results which might be accomplished by appeal from my ruling to the supreme court, error in my ruling denying the motion for a new trial cannot possibly lead all concerned far astray, and might possibly result in a decision of the supreme court defining the meaning of this statute, and thereby save much trouble and expense and in many cases wherein a similar legal action is involved.

"Accordingly, the motion for a new trial is overruled."

Appellant contends that the court refused to exercise its discretion in passing upon the motion for a new trial, relying on the case of *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *Brown v. Walla Walla,* 76 Wash. 670, 136 Pac. 1166; *Johnson v. Domer,* 76 Wash. 677, 136 Pac. 1169; *Clark v. Great Northern R. Co.,* 37 Wash. 537, 79 Pac. 1108, 2 Ann. Cas. 760; *Tacoma v. Tacoma Light & Water Co.,* 16 Wash. 288, 47 Pac. 738. Had the trial court's order denying the motion for a new trial contained only the statement above, there can be no question but what appellant's contention should be sustained. We find, however, that the court stated that "the evidence submitted to the jury in this case did establish the facts that the defendant, at the time and place alleged in the complaint, was engaged in fermenting corn mash in a root

cellar located some distance from Spokane. The surroundings accompanying the fermentation of the mash forcibly indicated that the defendant at the time of his arrest was engaged in the business of causing the mash to ferment, whereby and through subsequent processes intoxicating liquor might be produced.'' We are satisfied that the court did exercise its discretion in the denial of the motion for a new trial.

It is the contention of appellant that, with the apparatus and materials found, the appellant could not possibly manufacture intoxicating liquor, and therefore could not be found guilty of the offense charged, and the motion for a directed verdict should have been granted, relying upon the following rule of law:

"It is established as a fact by the special verdict that defendants at the time had never made any liquor, did not have a still, and had not been able to procure one, thus showing that the perpetration of the alleged crime was at the time obviously impossible.'' *State v. Addor,* 183 N. C. 687, 110 S. E. 650.

See, also, *Mixon v. State,* 14 Ala. App. 11, 70 South. 949; *State v. Crawford,* 21 Ariz. 501, 190 Pac. 422.

The testimony on the part of the state was as follows: That the officers known as the ''dry squad,'' on May 2, 1923, at Windsor Station, not far from Spokane, secreted themselves near a root cellar to apprehend some one engaged in the manufacture of liquor. They remained there from two o'clock in the afternoon until after dark. At 8:15 that evening, appellant drove his automobile, without lights, within about three feet of the door of the cellar, and upon alighting therefrom was immediately taken into custody by the officers. In the automobile were found six sacks of sugar, the kind that is used generally in the manufacture of moonshine. There were also two empty jugs and a whiskey tester.

Upon breaking the door to the root cellar, there were found six barrels of fifty gallons each of corn mash, kept warm and bubbling by gasoline and oil stoves, two ten gallon kegs and three five gallon kegs that had contained moonshine, a whiskey tester, some yeast and empty bottles. Appellant, at the time of his arrest, admitted that this was his fourth trip to that locality.

The evidence on the part of the state shows conclusively that it was impossible to manufacture intoxicating liquor with the apparatus, supplies and material found at the root cellar. One of the necessary parts of such apparatus is a still, and this they failed to find.

The statute provides that

"It shall be unlawful for any person to manufacture, sell, barter, exchange, give away, furnish or otherwise dispose of any intoxicating liquor, or to keep any intoxicating liquor, with intent to sell, barter, exchange, give away, furnish or otherwise dispose of the same, except as in this act provided." Rem. Comp. Stat., § 7309 [P. C. § 3166].

We held in the case of *State v. Fabbri,* 98 Wash. 207, 167 Pac. 133, L. R. A. 1918A 416, that "the extracting of the juice of the grapes and allowing it to ferment and thereby letting it become intoxicating liquor" was manufacturing liquor within the meaning of our statute if done with the intent of having it to so ferment and become intoxicating liquor, or if it was knowingly kept after it had so fermented.

Even though it be conceded that intoxicating liquor could not be manufactured by the use of the equipment found at the root cellar without the addition of a still, there can be no question but what the appellant was engaged in the manufacture of intoxicating liquor. It cannot be contended that this corn mash was used for

any other purpose. A still is not necessary and cannot be used until the corn mash reaches a certain degree of fermentation, and at this stage of the development one could be supplied or the mash taken to a still for distillation. It is said that "proof of the actual performance by him of any act necessary in the manufacture would meet all the requirements of the law of principals." *Bland v. State,* 92 Tex. 636, 244 S. W. 1023. Appellant had three hundred gallons of corn mash, kept warm by gasoline and oil stoves, bubbling and popping in process of fermentation. A still is used to separate the liquor from the mash by evaporation and condensation. One engaged in the fermentation is manufacturing liquor under our statute as much as one engaged in the distillation, when there is evidence that this fermentation is a part of the process of the manufacture of intoxicating liquor. One cannot avoid the law by manufacturing liquor in piecemeal or in part in different localities. The contention of appellant is wholly without merit. The facts were sufficient to go to the jury.

The judgment is affirmed.

Main, C. J., Fullerton, Bridges, and Mitchell, JJ., concur.