IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36260-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KURTIS PAUL JONES-TOLLIVER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Kurtis Jones-Tolliver appeals from four convictions entered in the

Stevens County Superior Court, arguing that the trial court erroneously admitted his

statements to the arresting officer. We affirm.

FACTS

Mr. Jones-Tolliver and Mr. Colton Haynes were arrested after being questioned by

law enforcement at the Colville Walmart store concerning some break-ins in the area.

The interview led to Mr. Jones-Tolliver being charged initially with two counts of

burglary and one count of theft of a motor vehicle. He later was charged with one count

of bail jumping. The original three counts were prosecuted on an accomplice liability

theory.

The court conducted a CrR 3.5 hearing before trial to determine the admissibility of Mr. Jones-Tolliver's statements. Officer Anthony Gorst testified that he jointly interviewed both Mr. Haynes and Mr. Jones-Tolliver in the security office at Walmart. He testified that he advised the defendant of his *Miranda*[1] warnings as he did in every case by reading from his department issued card. He did not recite the warnings in his testimony, nor was a copy of the *Miranda* card admitted into evidence. Officer Adam Kowal was present for the interview and also testified at the hearing that Officer Gorst had read the warnings to Mr. Jones-Tolliver.

Mr. Jones-Tolliver did not testify at the CrR 3.5 hearing. His counsel argued that his statements should be excluded to the extent they reflected the officer's "understanding" of what Jones-Tolliver had said rather than repeated the actual statements attributed to his client.[2] The trial court found that it was uncontested that the *Miranda* rights were read to Mr. Jones-Tolliver and that he voluntarily spoke with the officers. The court agreed with the defense that Officer Gorst could not testify about his impressions of the defendant's statements, but could testify that Mr. Jones-Tolliver admitted involvement, even if specific statements were not recalled. The defense was entitled to challenge the officer's trial testimony on evidentiary grounds.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).
[2] The hearing was held two years after the interview and the officers did not recall many specific statements by Mr. Jones-Tolliver.

2

The matter proceeded to trial. Mr. Jones-Tolliver took the stand in his own behalf. He admitted he was present during the crimes, which were committed by Mr. Haynes, but he did not knowingly take part in the crimes. Mr. Haynes testified similarly when called as a hostile witness by the State. The jury, nonetheless, convicted Mr. Jones-Tolliver as charged.

The court imposed a Drug Offender Sentencing Alternative sentence for the offenses. Mr. Jones-Tolliver timely appealed to this court. A panel considered his appeal without hearing argument.

## ANALYSIS

Mr. Jones-Tolliver contends that his statements were wrongly admitted because the officers did not recite at the CrR 3.5 hearing the text of the *Miranda* warnings given to him.[3] That issue is not preserved because he did not challenge the warnings at the CrR 3.5 hearing.

Prior to conducting a custodial interrogation, an officer must first advise the suspect of his rights regarding the interrogation. *Miranda v. Arizona*, 384 U.S. at 444. The government must establish that the suspect was advised of his rights, understood the rights, and knowingly waived those rights. *Id.*

---

[3] Because we conclude that no manifest error was established, we need not address the parties' competing arguments that admission of the statements was harmful or harmless.

CrR 3.5 establishes a pretrial process for admitting a defendant's statements at trial. While the rule broadly states that it governs the admission of "a statement of the accused," the rule actually applies only to custodial statements to law enforcement. *State v. McFarland*, 15 Wn. App. 220, 222, 548 P.2d 569 (1976); *State v. Harris*, 14 Wn. App. 414, 420-422, 542 P.2d 122 (1975). CrR 3.5 exists to implement the constitutional right to a voluntariness hearing for custodial statements. *State v. Williams*, 137 Wn.2d 746, 750-751, 975 P.2d 963 (1999).

Appellate courts treat uncontested findings of fact from a CrR 3.5 hearing as verities on appeal and, if challenged, examine whether the findings of fact are supported by substantial evidence. *State v. Broadaway*, 133 Wn.2d 118, 134, 942 P.2d 363 (1997). Substantial evidence exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Whether the findings of fact support the trial court's legal conclusions is a question of law reviewed de novo. *State v. Lorenz*, 152 Wn.2d 22, 30, 93 P.3d 133 (2004).

The parties agree that Mr. Jones-Tolliver was involved in a custodial interrogation and that his statements were subject to a constitutional voluntariness hearing. Appellant argues that the State did not meet its burden of proving he was advised of his rights since the warnings were not recited in the courtroom. He has not preserved that claim.

4

RAP 2.5(a) acknowledges the basic principle of appellate review—appellate courts will not review issues not raised in the trial courts. Matters of manifest constitutional error may be raised for the first time on appeal if the record is adequate. RAP 2.5(a)(3); *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995). Mr. Jones-Tolliver correctly observes that questions concerning the accuracy and adequacy of *Miranda* warnings present questions of constitutional law.

However, he identifies no authority supporting the proposition that the State must always meet its burden of proof by reciting the substance of the *Miranda* warnings into the record even when the adequacy of the warnings is not in question. While we agree that this is the better practice and that the State should enter at least a copy of the advice of rights into the record in some manner, the question of how the State meets its constitutional burden on this point is not itself a constitutional question.

Neither the case law nor CrR 3.5 mandates proof in such a manner. Although CrR 3.5 was designed to implement the constitutional right to challenge an involuntary statement, compliance with the rule does not present a constitutional issue. *Williams*, 137 Wn.2d at 749-755.[4] Even the failure to hold a CrR 3.5 hearing does not make a defendant's statement inadmissible. *State v. Vandiver*, 21 Wn. App. 269, 272, 584 P.2d

---

[4] *Williams* also noted that a CrR 3.5 hearing is not required in bench trials since a judge presumably will only consider admissible evidence. 137 Wn.2d at 752 (citing and quoting *State v. Wolfer*, 39 Wn. App. 287, 292, 693 P.2d 154 (1984)).

No. 36260-4-III
*State v. Jones-Tolliver*

978 (1978); *State v. Mustain*, 21 Wn. App. 39, 42-43, 584 P.2d 405 (1978). The question of how the hearing is conducted does not present an issue of manifest constitutional law.

Mr. Jones-Tolliver did not contend that the warnings were incompletely or inaccurately conveyed to him. In that circumstance, the testimony of two officers that the warnings were read from the department issued rights card provided the trial court with sufficient evidence to conclude that the *Miranda* rights were properly given and waived.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, J.

Lawrence-Berrey, C.J.

6